# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
02/17/2017

| | | |
|---|---|---|
| IN RE | § | |
| **FRONTIER HOTELS, INC.,** | § | **CASE NO. 16-34477** |
| **DEBTOR** | § | **CHAPTER 11** |

## ORDER APPROVING AND CONFIRMING AFNB'S
## COMBINED PLAN AND DISCLOSURE STATEMENT

On January 9, 2017, the Court entered an Order Under 11 U.S.C. § 1125 and Fed. R. Bankr. P. 3017 Conditionally Approving Disclosure Statement and Fixing Deadlines for Voting and Objections [Doc. 50] ("Conditional Approval Order"). Pursuant to the Conditional Approval Order, American First National Bank's Combined Plan and Disclosure Statement under Chapter 11 of the Bankruptcy Code filed on January 5, 2017 [Doc. 45] was transmitted with ballots to creditors and equity security holders on January 11, 2017 [Doc. 52].

Two (2) creditor timely cast ballots and four (4) additional creditors cast ballots that were received after the deadline, but in advance of the Confirmation Hearing. All six (6) ballots were cast in favor of the Plan. No party cast a ballot against acceptance of the Plan. A Verified Statement of Balloting Agent Certifying Ballots Accepting and Rejecting the Plan of Reorganization was filed [Doc. 79].

On February 15, 2017, the Court heard evidence and arguments of counsel for AFNB and the Debtor and determined that the requirements for final approval of AFNB's Combined Plan and Disclosure Statement have been satisfied, and that the requirements under 11 U.S.C. § 1129 for confirmation of the Plan, as modified on the record and as incorporated in the Plan attached hereto, have been satisfied. Accordingly,

IT IS ORDERED that AFNB's Combined Plan and Disclosure Statement filed on January 5, 2017, as modified herein, is finally approved and confirmed, and

A copy of the confirmed combined plan and disclosure statement is attached.

Signed: _2-16-17_

United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **FRONTIER HOTELS, INC.,** | § | **CASE NO. 16-34477** |
| **DEBTOR** | § | **(CHAPTER 11)** |

## AFNB'S COMBINED PLAN AND DISCLOSURE STATEMENT
### [As Confirmed]

**THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS SUBMITTED TO ALL CREDITORS OF THE DEBTOR, ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE AS TO THE PLAN OF REORGANIZATION. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE COMBINED PLAN AND DISCLOSURE STATEMENT WITH CARE.**

**THE DISCLOSURE STATEMENT HAS BEEN TENTATIVELY APPROVED BY COURT ORDER DATED JANUARY 10, 2017, A COPY OF WHICH IS INCLUDED HEREIN. THE PLAN HAS NOT YET BEEN APPROVED BY THE COURT. CREDITORS HAVE THE RIGHT TO OBJECT TO THIS DISCLOSURE STATEMENT AS NOT CONTAINING ADEQUATE INFORMATION AS REQUIRED UNDER SECTION 1125(b).**

## SUMMARY OF PLAN

Frontier Hotels, Inc. ("Frontier" or "Debtor") has essentially only one asset, a hotel and its contents, the Frontier Inn, located at 11230 Southwest Freeway, Houston, TX 77031 (the "Hotel"). American First National Bank ("AFNB") is owed $5.7 million on two promissory notes and holds a first and second lien against the Hotel and thus, is Frontier's most significant creditor. AFNB has located a party who is prepared to purchase the Hotel for $3.8 million. Since the Hotel is not a franchisee or licensee of any national brands and in need of significant repairs, AFNB believes that the purchase price is reasonable.

The Court issued a Scheduling Order which gave the Debtor until January 3, 2017 to file a Plan and Disclosure Statement. Frontier did not file a Plan timely and thus, AFNB filed this combined plan and disclosure statement ("Plan").

The Plan provides for the sale of the Hotel free and clear of liens to the purchaser with the proceeds from the sale used to pay closing costs, any liens superior to AFNB's liens, and AFNB's lien to the extent funds are available. Any accounts receivable and cash of the Debtor will first be used to pay approved administrative expenses, with the balance to be turned over to AFNB.

Counsel for AFNB will be the disbursing agent in the sale and related transactions and will be given the right to pursue any other assets that the Debtor may have including any "Chapter 5 claims." There will only distribution to the Debtor's unsecured creditors if the disbursing agent is successful in recovering on any Chapter 5 claims he determines to pursue. Because the priority and general unsecured creditors are unlikely to receive any distribution under the Plan, they are deemed to have rejected the Plan and are not asked to vote on the Plan.

If the Bankruptcy Court approves this Plan, creditors' rights to collect their debt will be limited by federal law (the Bankruptcy Code). If the Plan is approved, creditors will only be allowed to collect their debt from Frontier as provided in this document. The Debtor has not filed Monthly Operating Reports during the case and thus all information contained in this Combined Plan and Disclosure Statement has come from AFNB's records, the Debtor's Schedules and the Claims filed in this case.

## BACKGROUND

### 1.    Why Did Frontier File this Bankruptcy Case?

On or about September 5th, 2016, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code 11 U.S.C. § 101 et seq.

AFNB believes that Frontier filed this case to stop it from foreclosing on the Hotel.

Frontier had difficulty meeting its obligations over the last several years. In addition to the $5.7 million owed to AFNB, as is detailed below, Frontier owes $270,000 in real estate and ad valorem taxes (collectively "Property Taxes")

Frontier also failed to pay Choice Hotels franchise fees and as a result lost its right to operate as a Comfort Inn in late 2014. Additionally, Choice Hotels filed suit against Frontier and obtained a partial summary judgment asserting trademark infringement and related claims.

The Hotel was flooded in May 2015, but Frontier did not inform AFNB of the flooding until August 2015. At that time, Frontier was fifteen (15) months behind on its payments to AFNB and thus agreed that $50,000 of the $366,246 in insurance proceeds would immediately be applied to the amounts due to AFNB. Despite it being significantly behind on payments to the bank, AFNB attempted to work with Frontier to effect the necessary repairs. AFNB requested documentation for repairs that Frontier claimed it had made, but Frontier never provided documentation. Ultimately, the parties agreed that an additional $133,000 in insurance proceeds would be applied to the amounts due to AFNB. Frontier retained the balance.

At the creditor meeting, Frontier's representative testified that the Hotel was again flooded in April 2016. However, the Debtor has not provided AFNB with any insurance claim or other documentation that the Hotel was flooded in April 2016. Regardless, because of flood damage, the Hotel needs significant repairs.

AFNB posted the Hotel for September foreclosure and this Chapter 11 was filed the day before the foreclosure sale.

### 2.    What Has Happened Since The Bankruptcy Case Was Filed?

After it filed this Chapter 11 case, Frontier continued to operate the Hotel.

No statutory committee or trustee was appointed in this case.

The Court entered a Scheduling Order [Doc. 31] on October 17, 2016, which obligated the Debtor to file a disclosure statement and plan by January 3, 2017.

Since the case was filed, the Debtor's stated "plan" for this case was to obtain additional financing from AFNB to fund repairs to the Hotel.  By letter dated October 20, 2016, AFNB informed the Debtor that it would not be providing additional financing and encouraged the Debtor to seek other sources of financing or to locate a purchaser for the Hotel.  The Debtor has not obtained other financing, located another potential purchaser or proposed a plan of reorganization.

AFNB identified a party who expressed interest in purchasing the Hotel pursuant to a plan of reorganization and has entered into a purchase agreement (subject to a plan of reorganization and/or other order of this Court) ("Purchase Agreement").   The Purchase Agreement is attached as Exhibit A.

The Debtor sought authority to use cash collateral and AFNB agreed to allow the Debtor to use cash collateral on both an interim [Doc. 13] and final [Doc. 19] basis (collectively, "Orders on Use of Cash Collateral").  As adequate protection, the Orders on Use of Cash Collateral, provided AFNB Replacement Liens and an administrative expense claim.

Despite being specifically ordered to file Monthly Operating Reports in the Scheduling Order, the Debtor has not filed any operating reports and thus information regarding the results of its operations during Chapter 11 are not available.

The Debtor listed very little cash and no accounts receivable on its Schedules [Doc. 1 & 20].  Because there is no information about Frontier's operations during the Chapter 11, AFNB does not have any knowledge of the amount of cash currently available or whether it has any accounts receivable.

### 3.    How does Frontier Propose to Repay Its Debts?

In general, the Plan proposes to pay Frontier's creditors to the extent funds are available from the sale of the Hotel pursuant to the Purchase Agreement.  The purchase price is $3.8 million.  Because the sale was negotiated directly with the purchaser, no real estate broker or other sales commission have been incurred, but there will be customary closing costs associated with the sale (survey, title insurance, legal fees, document preparation fees, pro ration of taxes, etc.).  Because of the outstanding Property Taxes and the amount due to AFNB, clearly, there are not sufficient funds from the sale to satisfy all of the claims against Frontier.  In fact, if the Disbursing Agent is not able to collect any Chapter 5 Claims, it is very unlikely that any amount will be distributed to Frontier's unsecured creditors.

A.   Secured Debt - Property Taxes.   The allowed claims secured by a property tax lien ("Property Tax Claims") will be paid in-full at closing.   Harris County, City of Houston, Alief ISD, International Management District (collectively, the "Property Tax Authorities") and Propel Financial Services all timely filed proof of claims asserting tax liens against the Hotel.   Home Tax Solutions also filed a proof of claim on January 20, 2017 which was after the proof of claim bar date of January 4, 2017.   Additionally, on January 17, 2017 Harris County filed an Amended Claim and on February 6, 2017, Alief ISD, International Management District and the City of Houston filed Amended claims.   The following summarizes the claims filed, as amended:

| Harris County | $ | 12,591.37 |
|---|---|---|
| City of Houston | $ | 11,624.79 |
| Alief ISD | $ | 25,869.43 |
| International Management District | $ | 1,982.33 |
| Propel Financial Services | $ | 189,856.96 |
| Home Tax Solutions, LLC | $ | 96,523.34 |
| **Total** | **$** | **338,448.22** |

All Allowed Property Tax Claims will be paid-in-full at Closing of the sale of the Hotel, including any interest on the Property Tax Authorities claims for 2016.   To the extent that any Property Tax Claim is not paid at Closing, because it has not been allowed or disallowed or for any other reason, sufficient funds (including a provision for interest) will be held by the Disbursing Agent with any purported lien attaching to such funds pending an agreement of the parties or further order of the Court.

B.   Administrative Expenses.   In connection with the administration of this Chapter 11 Bankruptcy case, Frontier has incurred administrative fees to the United States Trustee and Debtor's counsel.   It is anticipated these fees will be not more than $20,000.   Once approved, if applicable, Administrative Expenses of up to $20,000 will be paid from the net closing costs from the sale of the Hotel after payment of closing costs and the Property Tax Claims.

C.   Secured Debt - AFNB.   AFNB filed a claim asserting a secured claim in the amount of $5,776,957.13 plus interest and attorney's fees.   AFNB's claim will not be paid-in-full but rather will be paid to the extent funds remain from the net proceeds of the sale of the Hotel less the Administrative Expenses.

D.   Internal Revenue Service.   The IRS filed a proof of claim asserting a $13,056.64 priority claim and a $600.97 unsecured claim.   The IRS will not receive any distribution from the sale of the Hotel and will only receive a distribution if the Disbursing Agent successfully recovers Chapter 5 Claims.

E.   Unsecured Claims.   Between the Debtor's schedules and the claims filed in the case, there are $329,000.00 in unsecured claims as detailed on the attached Exhibit B. The unsecured creditors will not receive any distribution from the sale of the Hotel and will only receive a distribution if the Disbursing Agent successfully recovers Chapter 5 Claims.

**4.      Creditors Divided into Classes.**

The Bankruptcy Code requires that creditors be divided into classes in the Plan.  That is, creditors with similar legal rights are put into the same class.  All creditors and the classes they are in are shown in section 9 of this document.

**5.      Creditors' Right to Vote on the Plan.**

In a Chapter 11 reorganization, generally, creditors have the right to Vote on a Plan. However, because Classes 3, 4 and 5 are unlikely to receive a distribution under the Plan, those Classes are deemed to have rejected the Plan and thus will not be required to vote.  Accordingly, each creditor should read this Combined Plan and Disclosure Statement carefully, discuss it with a lawyer and consider whether they should object to the Plan as discussed in the next paragraph.

The Court will conduct the "Confirmation Hearing" in this case to decide whether to confirm the Plan on February 15, 2017 at 2:00 p.m. at the Bankruptcy Court, 515 Rusk, Courtroom 403, 4th Floor, Houston, Texas 77002.

**6.      Creditors Also Have the Right to Object to this Disclosure Statement and Creditors Have the Right to Object to the Confirmation of the Plan.**

If a creditor believes this Combined Plan and Disclosure Statement does not contain sufficient information to decide whether to vote for or against the Plan, the creditor may file a written objection with the Bankruptcy Court.  If a creditor believes that the Plan does not meet the requirements of the Bankruptcy Code, the creditor may file a written objection with the Bankruptcy Court.  The deadline for objections has been set for February 10, 2017.

**7.      The Court May Approve this Plan and limit Creditor's Legal Rights.**

The Court will consider only written objections that are timely filed and ballots that are timely filed.  If no objections are filed (or if all objections are overruled by the Court) and at least one class of the creditors accepts the Plan, the Court may approve the Plan.  If the Court approves the Plan, all creditors will be bound, even if a creditor did not vote and even if a creditor voted against the Plan.  This means that a creditor will not be allowed to collect its claim against Frontier except as provided in the Plan.

**8.      How Does a Class "Accept" the Plan?**

Only Classes 1 and 2 may vote on the Plan and each of those Classes are considered separately.  Only the creditors who vote are counted.  The Court will conclude that the class "accepts" the Plan if two requirements are met:

- More than 50% of the voting creditors vote in favor of the Plan; and,

- Those creditors voting in favor of the Plan hold at least 2/3 of the total amount of the debt that is voted.

**9.      Which Class are you as a Creditor in, and How Does Frontier Propose to Pay the Class Under the Plan?**

The following is a list of Frontier's creditors and if and how the Plan proposes to pay them:

Class 1:        Class 1: <u>Property Tax Claimants - Secured</u>

This class is comprised of the claims of all taxing authorities and tax lien lenders owed property taxes by Frontier that are secured by a valid statutory lien on the Hotel. In general, Property Tax Claimants with Allowed Property Tax Claims will be paid in-full in connection with the closing on the sale of the Hotel.

*Specific Provision related to Home Tax Solutions*

With regard to the Home Tax Solutions claim which was filed after the proof of claim bar date, all rights to object to the claim as not timely filed are reserved for AFNB, Frontier and the Disbursing Agent. If an objection to such claim is filed prior to Closing of the sale of the Hotel, sufficient funds (including a provision for interest) will be held by the Disbursing Agent with purported lien attaching to such funds pending resolution of the objection to Home Tax Solutions claim.

*Specific Provision related to Alief ISD, City of Houston, International Management District and Harris County*

Notwithstanding anything to the contrary contained within the Plan, Alief ISD, City of Houston, International Management District and Harris County shall retain their statutory liens securing the prepetition taxes until such time as the taxes are paid in full. Further, the sale of the Hotel will not be free and clear of Alief ISD, City of Houston, International Management District and Harris County's 2017 tax lien. A provision for such taxes will be prorated in connection with the closing of the sale of the Hotel. Additionally, since the taxes for the 2016 tax year were not paid by January, 31, 2017, interest shall begin to accrue at the rate of 12% per annum until the taxes are paid in full.

*Specific Provision related to Propel Financial Services*

Because Propel Financial Services ("Propel") is oversecured, the amounts owed to Propel relating to its Proofs of Claim Nos. 9, 10, 11 and 12 (the "Propel Proofs of Claim"), are entitled to each bear interest at the rate of interest provided for under the notes attached to the respective Propel Proofs of Claim from and after September 5, 2016, (the "Petition Date"), and to accrue costs, charges and fees pursuant to 11 U.S.C. § 506(b). Propel shall file an application requesting allowance of any amounts under 11 U.S.C. § 506(b) relating to the Propel Proofs of Claim within fifteen (15) days following entry of an order confirming the Plan. Any objection to the Propel Proofs of Claim or Propel's application under 11 U.S.C. § 506(b) relating to the Propel Proofs of Claim shall be filed within ten (10) days following Propel filing its application. If no such objection is filed, the Propel Proofs of Claim, and all amounts requested by Propel under 11 U.S.C. § 506(b) relating to the Propel Proofs of Claim shall be deemed to be fully and finally allowed. To the extent that any dispute regarding the allowance of the Propel Proofs of Claim or amounts chargeable under 11 U.S.C. § 506(b) are not fully and finally determined at the time of Closing on the sale of the Hotel, an amount equal to the asserted claims of Propel (inclusive of charges asserted under 11 U.S.C. § 506(b) through the closing date) plus $15,000.00 shall be reserved from the sale proceeds and held by the Disbursing Agent in a segregated account with any purported liens attaching to such funds to adequately protect Propel through the entry of a final order allowing the Propel Proofs of Claim.

Class 2:      AFNB - Secured

This class is comprised of the claim of AFNB secured with liens on the Hotel.  AFNB will receive the net proceeds from the sale of the Hotel after payment of closing costs and Administrative Expenses.  This class is impaired.

Class 3:      Priority Unsecured Creditors

Class 3 is comprised of priority unsecured claims.  Based on the Debtor's schedules and the claims filed in the case, the only priority unsecured creditor is the Internal Revenue Service. The Priority Unsecured Creditors will not receive any distribution from the sale of the Hotel and will only receive a distribution if the Disbursing Agent successfully recovers Chapter 5 Claims. Class 3 is impaired and will be deemed to have rejected the Plan since no disbursement is anticipated being made to Class 3 creditors.

Class 4:      Unsecured Creditors

Class 4 is comprised of the unsecured claims listed on the Debtor's schedules, the unsecured claims filed, the unsecured portion of AFNB's claim and any deficiency claimed by Toyota Motor Credit.[1]  The Unsecured Creditors will not receive any distribution under the Plan. The Unsecured Creditors will not receive any distribution from the sale of the Hotel and will only receive a distribution if the Disbursing Agent successfully recovers Chapter 5 Claims. Class 4 is impaired and will be deemed to have rejected the Plan since no disbursement is anticipated being made to Class 4 creditors.

Class 5:      Shareholders

The remaining class includes the shareholders of Frontier, Muddasa Khan and Abdus Salam.  As this is a liquidating Plan, Mr. Khan and Mr. Salam will not receive any distribution under the Plan.  Class 5 is impaired and will be deemed to have rejected the Plan since no disbursement will be made to Class 5 members.

**10.    What If a Creditor Is Not Listed in Paragraph 9 Above?**

Paragraph 9 lists all of the classes of creditors who were listed on Frontier's schedules and/or have filed claims against Frontier in the case.  The deadline to file a proof of claim was January 4, 2017 and thus AFNB believes that all claims have been included in paragraph 9.  Any claims not yet filed or described in paragraph 9 will be considered disputed claims.  All claims that are to be paid under the Plan are listed in paragraph 9.

**11.    How Does the Plan Propose to Remit Payments to Creditors?**

The Plan proposes to sell Frontier's only asset, the Hotel.  AFNB's legal counsel, John Akard Jr., ("Disbursing Agent") who is also a licensed CPA, will act as the disbursing agent of

---

[1]      Toyota Motor Credit moved for relief from stay on December 8, 2016 [Doc. 36].  Frontier did not file a response and thus it is presumed that Toyota will obtain relief from stay and will repossess its collateral.  To the extent its collateral is not sufficient to satisfy Toyota's claims, it will have an unsecured deficiency claim.

all amounts due under the Plan and after confirmation, pursuant to this Plan, has the authority to sign on behalf of the Debtor to give effect to the Plan.

Class 1, Property Tax Claims will be paid at the closing of the sale of the Hotel. The Administrative Claimants will be paid once the amount due such claimants is determined as provided in paragraph 12 below. After payment of the Administrative Expenses, Class 2, AFNB will receive the funds which remain from the net proceeds from the sale of the Hotel funds, less the Administrative Expenses, plus any cash and any amounts collected on accounts receivable of the Debtor as of the closing of the sale.

The Disbursing Agent will be responsible for disbursing any amounts due under the Plan to Class 3 and Class 4.

### 12.    How Does the Plan Propose to Pay Administrative Expenses and Fee Claims?

As of the date of confirmation, Frontier will owe administrative professional fees to its legal counsel and the United States Trustee. The US Trustee's fees will be paid from the net proceeds from the sale of the Hotel until the case is closed. Each person/professional asserting a fee claim for services rendered or expenses incurred during Frontier's Chapter 11 proceeding shall file with the Bankruptcy Court, and serve on the U.S. Trustee, AFNB's counsel, Frontier and its counsel, a fee application within 30 days after confirmation of the Plan.

Unless otherwise agreed by the holder of an administrative claim, its professionals shall receive from Frontier the amount of its allowed claim payable within 10 days of on the latter of 15 days after confirmation of the Plan or after the Bankruptcy Court's approval of their respective fee applications.

### 13.    What are the Disbursing Agent's Duties and Responsibilities?

The Disbursing Agent is responsible for making the disbursement provided for in this Plan. The Disbursing Agent may make such disbursement in the manner in which he deems reasonable and appropriate. To effect the payments under the Plan, the Disbursing Agent may utilize bank accounts as he determines is reasonable under the circumstances including using Frontier's existing bank accounts, his IOLTA or a special trust account or a separate account at AFNB or another bank of his choosing. After Closing, the Disbursing Agent may make interim disbursement to Administrative or Class 1 and 2 Claimants as he believes is reasonable and appropriate. Further, if he successfully pursues Chapter 5 Claims, the Disbursing Agent may make disbursements to himself, his attorneys and the Class 3 and 4 Claimants as he determines is reasonable and appropriate.

As part of his responsibilities under the Plan, the Disbursing Agent will take the steps he believes are necessary to evaluate whether Frontier has any claims against third parties under the Bankruptcy Code or state law including under §547, §548 and §549 of the Bankruptcy Code ("Chapter 5 Claims").

At this time, AFNB is not aware of any Chapter 5 Claims. However, AFNB notes that Frontier did not file a Statement of Financial Affairs which would include payments or transfers to third parties within ninety (90) days of the bankruptcy filing or to insiders within one (1) year

of the bankruptcy filing. Additionally, AFNB notes that Frontier has not filed any monthly operating reports as required. Frontier's failure to comply with these filing requirements at least gives rise to the possibility that Mr. Khan, Mr. Salam or other persons may be subject to Chapter 5 Claims against them.

Even if the Disbursing Agent determines that there are available Chapter 5 Claims or potentially available Chapter 5 Claims, the Disbursing Agent, may, in his sole reasonable discretion determine to not pursue those Chapter 5 Claims.

Within six (6) months of confirmation of the Plan, the Disbursing Agent will file a notice with the Court of his determination of whether or not any Chapter 5 Claims exist. The filing of such notice does not operate as a time bar to any claims Frontier or its creditors may have, but rather is to provide notice to Frontier's creditors and other interested parties of the Disbursing Agent's intent.

The Disbursing Agent will be given all of the rights of Frontier under the Bankruptcy Code to pursue claims and may make demand, bring suits, or otherwise pursue collection of any amounts potentially due to Frontier on the Chapter 5 Claims.

The Disbursing Agent will be entitled to recover reasonable and necessary attorney's fees, whether paid to his firm or other firm(s), related to his efforts. Further, the Disbursing Agent will be paid compensation pursuant to §326 of the Bankruptcy Code of any amount disbursed to Frontier's Class 3 and 4 creditors pursuant to this Plan.

### 14.    Are the Executory Contracts or Leases Assumed or Rejected?

Frontier has been using the Hotel to operate its business. As a result, there may be certain executory contracts that exist that are related to the operation of the Hotel. AFNB is not aware of any such contracts and the only executory contract listed on the Debtor's schedules is with Best Western. AFNB does not believe that Frontier in fact has an executory contract with Best Western.

To the extent that executory contracts or leases do exist they are rejected unless the Purchaser determines that it desires to assume such contracts. In the event that the Purchaser determines that desires to assume an executory contract or lease, the Purchaser will file a notice with the Court prior to Closing. Except as specifically assumed by the Purchaser under this paragraph, any and all executory contracts and leases are rejected upon Closing.

Any party believing it has an executory contract or lease with the Debtor will have thirty (30) days after Closing to file a claim for the amount which results from the rejection of the executory contract or lease.

### 15.    What to Do for More Information?

Creditors should talk to a lawyer about their rights and the responsibility in this case. Creditors should have their lawyers call the lawyer for the Debtor or AFNB, as follows:

**AFNB's lawyer:**

> John Akard Jr.
> Coplen & Banks, P.C.
> 11111 McCracken, Suite A
> Cypress, TX 77249
> 832-237-8600
> Fax: 832-202-2088
> johnakard@attorney-cpa.com

If a creditor does not have a lawyer, but still wants more information, that creditor can call the foregoing lawyers directly.   HOWEVER, THESE LAWYERS CANNOT GIVE CREDITORS LEGAL OR FINANCIAL ADVICE BECAUSE THESE LAWYERS REPRESENTS THE DEBTOR OR AFNB AND NOT OTHER CREDITORS.

**16.     Are There Any Alternatives to the Plan?**

There are three alternatives: conversion to a Chapter 7, sale to another party, or dismissal. AFNB believes that the Purchaser has made a reasonable offer for the Hotel.  AFNB explored various options and talked with other parties who might have interest in the Hotel.  Purchaser was the only party who was sufficiently interested to move forward with an offer and ultimately enter into the Purchase Agreement.  AFNB believes that a sale of the Hotel pursuant to the Plan is the best alternative to maximize recovery for Frontier's creditors.

**17.     Is There Any Risk That the Plan Might Not Succeed?**

Yes.  It is possible that the Purchaser will not able to or will simply refuse to close the purchase.  In such event, it is likely that AFNB will move for relief from stay so it may foreclose on the Hotel and the case will be converted to Chapter 7 or dismissed.

**18.     Class 1 and 2 Ballots.**

Only Classes 1 and 2 are allowed to vote under this Plan.

THE DEADLINE FOR BALLOTS IS FEBRUARY 10, 2017

Ballots are to be mailed, faxed or emailed to:

John Akard Jr.
Coplen & Banks, P.C.
11111 McCracken, Suite A
Cypress, TX 77249
Fax: 832-202-2088
Email: johnakard@attorney-cpa.com

**20.     Vesting of Property**

Upon Closing Frontier's property will vest as follows:

- The Hotel will vest in the Purchaser free and clear of all liens, claims, interests, and charges arising on or before the confirmation of the Plan, except as specifically provided for in this Plan.

- All cash, accounts receivable and any other property of the Debtor upon which AFNB's security interest extends to under §552 will vest in AFNB.

- All remaining assets or claims, including the Chapter 5 Claims will vest in the Disbursing Agent to be managed and administered pursuant to this Plan.

The Disbursing Agent is authorized to enter into such agreements or prepare and enter into such documents as are necessary to effect the Closing, the vesting of the property. Further, the Disbursing Agent is authorized to enter into such agreements or prepare and enter into such documents as are necessary to pursue the Chapter 5 Claims and such other matters which may reasonably arise as necessary under the terms of this Plan.

### 21.   Closing.

Closing shall occur within thirty (30) days of the Order Confirming Plan becoming a final, non appealable order upon a date agreeable to the Purchaser, the Disbursing Agreement and AFNB.

Respectfully submitted,

By::  /s/ John Akard Jr.
**JOHN AKARD JR.** TBA #00790212
**COPLEN & BANKS, PC**
11111 McCracken, Suite A
Cypress, TX 77429
832-237-8600
832-202-2088 (fax)
ATTORNEYS FOR AMERICAN FIRST NATIONAL
BANK

# EXHIBIT A

Case 16-34477 Document 65 2 Filed in TXSB on 02/16/17 Page 14 of 18

## AGREEMENT

This Agreement (hereinafter referred to as this "Agreement") is made by and among AMERICA FIRST NATIONAL BANK ("AFNB") and MANVINDER CHEEMA ("CHEEMA").

**Recitals**

WHEREAS, AFNB has made loans to FRONTIER HOTELS, INC. which loans are secured by a first lien position on an eighty rooms hotel property known as the Frontier Hotel located at 11230 Southwest Freeway, Houston, Texas 77031 comprising approximately 2.5574 acres of land and including improvements [TR A4-25, ABST 651 L ROARK] the legal description of which is attached as Exhibit "A") (hereinafter referred to as the "Hotel Property");

WHEREAS, AFNB sought to foreclose on the Hotel Property as a result of the default by Frontier Hotels, Inc. in the payment of the note on the Hotel Property;

WHEREAS, Frontier Hotels, Inc. filed bankruptcy under Chapter 11 of the Bankruptcy Code on September 5, 2016 under Cause No. 16-34477 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (hereinafter referred to as the "Bankruptcy"); and

WHEREAS, CHEEMA is interested in purchasing the Hotel Property, subject to bankruptcy court approval.

NOW, THEREFORE, in consideration of the mutual agreements and covenants contained herein and for other valuable consideration, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and among the parties to this agreement as follows:

1.     CREDITOR PLAN OF REORGANIZATION.  AFNB agrees to file a Creditor's Plan of Reorganization in the Bankruptcy after the Debtor's exclusivity period for submitting a plan expires on January 3, 2017.  In AFNB's Plan of Reorganization, AFNB shall seek approval for the sale of the Hotel Property to Cheema on the terms set forth herein.  AFNB agrees not to support any other prospective purchaser of the Hotel Property so long as this Agreement is in effect.  Cheema agrees not to pursue the purchase of the Hotel Property except in accordance with the terms of this Agreement.

Price is final commitment, can not be discounted, and the property is sold "AS IS"

2.     TERMS OF PURCHASE.  Cheema agrees to purchase the Hotel Property for a total purchase price of Three Million Eight Hundred Thousand Dollars ($3,800,000.00) on the following terms:  at closing Cheema shall make a down payment of One Million One Hundred Forty Thousand Dollars ($1,140,000.00) at the Closing.  AFNB shall finance the balance of the purchase price on the basis of a twenty-year amortization at an interest rate of ___% per annum.  Cheema shall also inject between $500,000 and $600,000 to renovate the Hotel Property and to obtain a Franchise Agreement for the Hotel Property.    with a 5 years maturity. Interest rate WSPJ + 1.0% with 4.5% Floor rate.

the final terms of the purchase will be subject to AFNB Board approval

3.     AGREEMENT SUBJECT TO BANKRUPTCY COURT APPROVAL.  This Agreement shall be conditioned on Bankruptcy Court approval of a Plan of Reorganization containing terms substantially similar to the terms approving the sale of the Hotel Property to Cheema as set forth in paragraph 2 above. The Closing shall take place within 60 days after such Bankruptcy Court approval.

1

Case 16-34477 Document 8652 Filed in TXSB on 02/16/2017 Page 15 of 18

4.     MISCELLANEOUS TERMS AND CONDITIONS.

PARTIES BOUND.  Neither party may assign this Agreement without the prior written consent of the other, and any such prohibited assignment shall be void, except that Cheema may assign this Agreement to an entity in which he owns at least 30 %.  Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the respective legal representatives, successors, assigns, heirs, and devisees of the parties.

SURVIVIAL.  Unless otherwise expressly stated in this Agreement, none of the covenants, obligations, representations or agreements contained in this Agreement shall survive the Closing or the execution and delivery of the Deed required hereunder.

NO THIRD-PARTY BENEFICIARY.  This Agreement is not intended to give or confer any benefits, rights, privileges, claims, actions, or remedies to any person or entity as a third party beneficiary, whether by decree or otherwise.

ENTIRETY OF AGREEMENT.  This Agreement embodies the entire agreement between the parties and supersedes all prior agreements and understandings relating to the Property.  There are no verbal agreements, representations or inducements between the parties.

AMENDMENTS MUST BE IN WRITING. This Agreement may be amended or supplemented only by an instrument in writing executed by the party against whom enforcement is sought.

TIME OF THE ESSENCE. Time is of the essence in the performance of this Agreement.

ATTORNEY'S FEES.  Should either party employ attorneys to enforce any of the provisions hereof, the party against whom any final judgment is entered agrees to pay the prevailing party all reasonable costs, charges, and expenses, including reasonable attorneys' fees, expended or incurred in connection therewith.

NOTICES.  All notices required or permitted hereunder shall be in writing and shall be served on the parties at the addresses set forth on the signature page hereto.  Any such notices shall be either (i) sent by overnight delivery using a nationally recognized overnight courier, in which case notice shall be deemed delivered one business day after deposit with such courier, (ii) sent by facsimile, with written confirmation by overnight or first class mail, in which case notice shall be deemed delivered upon receipt of confirmation of transmission of such facsimile notice, or (iii) sent by personal delivery, in which case notice shall be deemed delivered upon receipt.  A party's address may be changed by written notice to the other party; provided, however, that no notice of a change of address shall be effective until actual receipt of such notice.  Notwithstanding the inclusion of the parties' e-mail addresses on the signature page hereto, sending a notice by e-mail is not a permitted method of giving notice pursuant to the terms hereof.

CONSTRUCTION.  The parties acknowledge that the parties and their counsel have reviewed and revised this Agreement and that the normal rule of construction – to the effect that any ambiguities are to be resolved against the drafting party – shall not be employed in the interpretation of this Agreement or any exhibits or amendments hereto.

2

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date specified below.

Executed on the 29th day of November, 2016.

_____
MANVINDER CHEEMA

Address for Notice Purposes:

3007 Kobi Ct

HOUSTON, TX 77068

AMERICA FIRST NATIONAL BANK

By: _____
    BRUCE CHANG
    PRESIDENT

Address for Notice Purposes:

_____

_____

3

# EXHIBIT B

## Claims Analysis
### Exhibit B

| Claim | Name of Creditor | Amount Scheduled | Amount in POC | Class 1 Secured Amount | Class 2 Secured Amount | Class 3 Priority Amount | Class 4 Unsecured Amount |
|---|---|---|---|---|---|---|---|
| | A-Hawk Grease Trap Company | $4,220.00 | | | | | $4,220.00 |
| 14 | Choice Hotels (c/o Christian & Small) | $66,755.71 | $287,852.39 | | | | $287,852.39 |
| | ECOLAB Inc. | $3,031.68 | | | | | $3,031.68 |
| | Home Tax Solutions HTS | $87,498.45 | | | | | $87,498.45 |
| 7 | Paramount | $47,500.00 | $163,438.28 | | | | $163,438.28 |
| 9,10,11,12 | Propel Financial Services | $182,921.93 | $189,856.96 | $189,856.96 | | | |
| | RETC Property Tax Consultants | $2,281.09 | | | | | $2,281.09 |
| | Sweetwater Pools | $757.76 | | | | | $757.76 |
| | USA Today | $603.50 | | | | | $603.50 |
| | Texas Comptroller | $0.00 | | | | | $0.00 |
| 8 | Toyota Motor Credit Corp | $0.00 | $42,886.72 | | repossess collateral | | unknown |
| 6 | Toyota Motor Credit Corp | $27,766.64 | $27,766.64 | | repossess collateral | | unknown |
| 5* | IRS | $0.00 | $13,657.61 | | | $13,056.64 | $600.97 |
| 4 | International Mgmt District | | $3,187.00 | $3,187.00 | | | |
| 3 | Alief ISD | | $40,793.53 | $40,793.53 | | | |
| 2 | City of Houston | | $19,157.67 | $19,157.67 | | | |
| 1 | Harris County | | $18,409.30 | $18,409.30 | | | |
| 13 | American First National Bank | $3,378,557.00 | $5,776,957.13 | | $5,776,957.13 | | |
| Total | | | | $271,404.46 | $5,776,957.13 | $13,056.64 | $550,284.12 |

*-Amended Claim